Filed 3/14/13  In re N.V. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re N.V., a Person Coming Under the Juvenile Court Law. | B243067 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>ANTONIO V.,<br><br>          Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK89260) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert Stevenson, Judge.  Dismissed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————————

Antonio V. (father) appeals from the judgment adjudicating his daughter, N.V., a dependent child within the meaning of Welfare and Institutions Code section 300 subdivion (b) and placing her with mother.[1]  We dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father were not married when N.V. was born in September 2008. After N.V. was born, mother continued to live in an apartment with her three brothers. Father lived elsewhere but had keys to the apartment.  On October 30, 2010, mother called the police after she came home with N.V. at about 11:45 p.m. to find father in the apartment.  When she refused to have sex with him, father hit mother in the head with a metal wastebasket, then threw the wastebasket at the television and knocked over a table with glass bottles on it, causing the bottles to shatter on the floor.  He then fled the apartment.  Mother did not follow up on the officers' suggestion that she obtain a restraining order against father.

On July 7, 2011, police investigated an anonymous report that N.V. had been sexually abused by a maternal uncle.  Two days later, mother was arrested for spousal abuse after father accused her of stabbing him with a kitchen knife.  On July 11, mother entered a domestic violence shelter with N.V. The next day, police investigated mother's report that father had made criminal threats against her.  That same day, July 12, the Department of Children and Family Services (DCFS) received a referral alleging general neglect as well as physical and sexual abuse of N.V.  The social worker responded to mother's apartment and interviewed the apartment building's resident manager, who stated that mother had lived in the building with the maternal uncles since October 2007; father visited occasionally but did not live there; N.V. seemed happy and well cared for. The manager did not observe any evidence of domestic violence but mother had asked to have the locks changed several times, including the day before, because of "problems" with father.

---

[1]     All future undesignated statutory references are to the Welfare and Institutions Code.

The social worker returned to the apartment building the next day and interviewed one of the maternal uncles. The uncle stated that father had taken N.V. out of school without mother's permission the previous Friday and then refused to return her. The uncle also reported that there had been domestic violence in mother's and father's relationship for a long time, but mother had been afraid to call the police. The social worker interviewed the other uncles a few days later. They denied any sexual abuse and generally corroborated mother's version of events. They were afraid of father and did not believe mother was able to protect herself from him.

The social worker interviewed mother at the domestic violence shelter a few days later. N.V. was clean, well groomed and had no marks or bruises. During a tantrum, N.V. hit her own head with her closed fists and pulled her own hair. Mother stated that she and father frequently argued in the front seat of father's car while N.V. was in the back seat either awake or awakened by the arguing. On these occasions father would intentionally drive erratically – at excessive speeds and with sudden stops – causing N.V., who father never strapped into her car seat, to flail around. Mother would ask father to stop in order to strap in N.V. properly, but he always refused. Mother accused father of fabricating the sexual abuse allegation against her brother because mother denied ever physically abusing N.V. or father.

Mother accused father of physically and emotionally abusing her. She did not go into a shelter after the October 2010 incident because she feared for the safety of her brothers and mistakenly believed she could protect them from father. Mother denied attacking father with a knife. She explained that father took N.V. from school that day and refused to return her. Later that night, father told mother he would not return N.V. unless mother agreed to reconcile with him. Mother refused and when a patrol car drove by, father ran to it. The next thing mother knew, a second patrol car had arrived and she was arrested. Mother speculated that father had sustained injuries at his job which he falsely blamed on her.

Father told the social worker that although he was the resident manager of an apartment building, he lived with mother. He accused mother of being the aggressor in the domestic violence that occurred in their relationship.

N.V. was detained from mother on August 4, 2011, and placed with foster parents. That same day, mutual stay-away orders were issued against mother and father. Father did not appear at the detention hearing on August 9, at which he was found to be an alleged father. Finding that DCFS had made a prima facie case for detaining N.V., the juvenile court ordered no contact with father, and monitored visits for mother, with DCFS discretion to place N.V. with mother.

Adjudication was continued numerous times. Father appeared for the first time at the continued hearing on October 6. He represented that a Temporary Restraining Order had issued against mother on July 14 with a return date of August 3, and that father had been given full custody of N.V. The juvenile court granted mother's request for a temporary restraining order against father (except for monitored visits).

On November 15, mother was in compliance with the reunification plan, and DCFS was recommending that N.V. be declared a dependent child and placed with mother. At father's request, the hearing was continued, pending which N.V. was released to mother. By March 15, both parents were participating in services. Over DCFS objection, father was given unmonitored visits, with the exchange to occur at a local police station. Adjudication was continued to May 10. On May 10, DCFS reported problems with father's unmonitored visits. In particular, the people who transported N.V. to the visits claimed that father threatened and intimidated them. In addition, father reported that N.V. said mother had hit her; mother reported that N.V. had begun wetting the bed; father threatened the social worker that he was going to speak to the news media about his case; and father continued to blame mother for everything. The social worker believed father had not benefitted from his domestic violence programs.

In a Last Minute Information For Court Officer filed on July 20, DCFS recounted what it characterized as "some bizarre behaviors" by father, including accusing maternal grandfather of being a drug dealer in Mexico, mother of being a drug mule for maternal

grandfather, alleging that two men "from immigration" came to his home looking for mother, and these same two men have been following father. According to DCFS, father said he had stopped answering his phone because of various calls he had received: a woman called and told him the May 10 court date had been canceled; and someone called father's employer and accused father of being a child molester but father would not give the social worker his employer's name or number.

At the July 20, 2012, contested adjudication hearing, father testified that he was enrolled in a domestic violence batterer's program because of the court order, but denied there was any domestic violence in his relationship with mother, including the incidents described in the petition. He reiterated the claim that mother attacked him with a knife on July 8, 2011, and that he called the police. Father denied ever driving erratically while N.V. was a passenger in his car.

A., father's daughter, recalled that on July 8, 2011, she went with father to drop off N.V. A. saw mother poke at father with a knife and heard mother say she did not want N.V. A. telephoned her brother to come pick her up so that father could call the police. A. was not present when the police arrived and never spoke to them. A. never saw father being aggressive toward mother, and he was never aggressive toward A. A. testified that she had been a passenger in a car in which N.V. was seated in a car seat; father drove well and A. was never afraid of his driving.

After finding that father and A. were not credible, the juvenile court sustained two allegations in the petition, one based on a history of domestic violence and the other based on father placing N.V. in a detrimental and endangering situation when he drove erratically with an unrestrained N.V. N.V. was placed with mother under DCFS supervision, and family maintenance services were ordered for them. Father was given monitored visits and ordered to participate in a 52 week domestic violence program, parenting program and individual counseling.

Father timely appealed and we appointed counsel to represent him. After reviewing the record and juvenile court file and conferring with trial counsel, appellate counsel filed a letter stating she could not find any arguable issues for appeal. (*In re*

5

*Sade C.* (1996) 13 Cal.4th 952.)  We sent a letter to father telling him he could file a letter or brief raising any issues he wished us to consider in his appeal.

Father submitted a letter asserting that he did not do the things he was accused of doing.  We understand this as a challenge to the sufficiency of the evidence to support the jurisdictional order but find no merit to the challenge.  Credibility questions are exclusively the domain of the juvenile court, not this court.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)  As the court explained in *In re E.B.* (2010) 184 Cal.App.4th 568, 576, evidence of domestic violence in the same household where children are living constitutes a failure to protect the children from the substantial risk of encountering the violence and suffering serious physical harm or illness from it under section 300, subdivision (b).  Here, there was ample evidence of domestic violence between mother and father in N.V.'s presence, as well as dangerous driving while N.V. was not restrained in a car seat.  This evidence was sufficient to establish dependency jurisdiction.  We have reviewed the appellate record and find no arguable issues on appeal.  The matter is therefore dismissed.

**DISPOSITION**

The appeal is dismissed.


RUBIN, J.
WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

6